## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| **ETHAN WILLIAMS, an individual,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **Civil Action File** |
| | ) | **No. _____** |
| **NEWTON COUNTY SCHOOL DISTRICT; and** | ) | |
| **SAMANTHA FUHREY, Superintendent,** | ) | |
| **in her Official and Individual Capacities; and** | ) | |
| **KEISA VINCENT, Principal,** | ) | |
| **In her Official and Individual Capacities; and** | ) | |
| **JAMEZ DUDLEY, individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

## COMPLAINT

**COMES NOW ETHAN WILLIAMS** and files this Complaint against the

Newton County School District, Samantha Fahrey, Keisa Vincent, and Jamez Dudley

and shows this Honorable Court as follows:

## BACKGROUND/PARTIES

This case arises as a result of the actions, in-actions, mis-actions, failures to act

and deliberate indifference of the Newton County School District and members of its

administration. The callous and deliberate indifference in the carrying out of

Defendants' ministerial and discretionary duties, along with a general *laissez-faire*

response to their respective duties resulted in the prolonged sexual abuse of a student

attending Liberty Middle School in Covington, Georgia.

The Plaintiff was carefully groomed over a prolonged period by his music/choir teacher, Jamez Dudley, a music/choir teacher employed by the Newton County School District and assigned to Liberty Middle School.

Prior to his employment by the Newton County School District and assignment to Liberty Middle School, Jamez Dudley was employed by the Clayton County School District and assigned as a music/choir teacher at North Clayton Middle School where he had a history of prior misconduct involving his young male students.

The facts and actions set forth below demonstrate a clear case of a do-nothing administration, describes how the Defendants ignored both state and federal laws, rules and regulations; violated clearly established policies and procedures; breached ministerial duties and clearly demonstrated a total conscious disregard of a known or obvious risk of harm and failure to verify facts of things known and what should have been known and competently investigated.

## **PARTIES**

1.      This action is brought by Ethan Williams (hereinafter sometimes "Williams" or as "Plaintiff").

2.      Ethan Williams, born on September 12, 2005, was a 13-year-old 7th grade student attending classes at Liberty Middle School.

3.      At all times relevant hereto, Ethan Williams was a resident of Newton County,

has now reached adulthood, and by the filing of this Complaint submits to the jurisdiction and venue of this Honorable Court.

4.      The Newton County School District (hereinafter sometimes "the District" or as the "NCSD") is a public school district headquartered at 2109 Newton Drive Northeast, Covington, Georgia.

5.      The Newton County School District includes all areas of Newton County including Covington, Mansfield, Newborn, Oxford, Porterdale and portions of Social Circle.

6.      Defendant Newton County School District can be properly served in this action by delivering a Summons and Complaint to the current Superintendent of the Newton County School District, Dr. Duke Bradley at its' offices located at 2109 Newton Drive Northeast, Covington, Georgia; or service may be acknowledged.

7.      Liberty Middle School (hereinafter sometimes "Liberty Middle" or "LMS") is a public educational institution located at 5225 Salem Rd, Covington, GA 30016, and is a part of the Newton County School District.

8.      At all times relevant hereto, Samantha Fuhrey (sometimes "Fuhrey") was the Superintendent of the Newton County School District.

9.      At all times relevant hereto, Fuhrey acted in her individual and official capacities; worked within the County of Newton; and was an agent/employee of the

Newton County School District, and at all times relevant hereto, acted and failed to act within the scope, course, and authority of her employment.

10.     Samantha Fuhrey can be properly served in this action by delivering a Summons and Complaint to her at residence, 160 Clear Spring Lane, Oxford, Georgia 30054 in Newton County or wherever she may be located in the State of Georgia; or in the alternative, service may be acknowledged.

11.     At all times relevant hereto, Keisa Vincent, (hereinafter sometimes "Vincent") was the Principal of Liberty Middle School.

12.     At all times relevant hereto, Vincent acted in her individual and official capacities; worked within the County of Newton; and was an agent/employee of the Newton County School District, and at all times relevant hereto, acted and failed to act within the scope, course, and authority of her employment.

13.     Keisa Vincent can be properly served in this action by delivering a Summons and Complaint to her at 731 Basswood Avenue, McDonough, Georgia 30252 in Henry County, or wherever she may be located in the State of Georgia; or in the alternative, service may be acknowledged.

14.     At all times relevant hereto, Jamez Dudley was music/choir teacher employed by the Newton County School District and assigned to Liberty Middle School.

15.     Jamez Dudley can be properly served in this action by delivering a Summons

and Complaint to him at 1121 Sunset Run NE, Conyers, Georgia 30012 in Rockdale County, or wherever he may be located in the State of Georgia; or in the alternative, service may be acknowledged.

## JURISDICTION AND VENUE

16.    This Court has jurisdiction over this civil matter because it arises, among other causes of action, under the Constitution of the United States and involves matters of federal law pursuant to 28 U.S.C. § 1331, specifically as to certain claims enumerated below made under Title IX, 20 U.S.C. § 1681 *et seq.*

17.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives District Courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

18.    Plaintiff brings this action to redress, among other claims, a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein.

19.     Venue in the Northern District of Georgia, is proper as to all parties pursuant to U.S.C. 28 § 1391.

## PRE-SUIT NOTIFICATION

20.     Attached hereto as Exhibit "A," is a copy of the pre-suit notice of claim dated August 28, 2024, presented to:

- Abigail Coggin, Chair, Newton County School Board;

- Duke Bradley, Superintendent of the Newton County School District;

- Niquan Alston, principal, Liberty Middle School; and

- Georgia Department of Administrative Services, Risk Management Division.

21.     Attached hereto as Exhibit "B" are receipts for the pre-suit notices of Claim sent to the immediately above identified individuals and entities.

## FACTS AS TO THE INCIDENT

22.     Ethan Williams was at times relevant hereto an 8th grade student attending Liberty Middle School in Conyers, Georgia.

23.     Defendant Jamez Dudley was employed by the Clayton County School District and worked as a music/choir teacher at the North Clayton Middle School in College Park, Georgia from approximately August 1, 2016 through May 29, 2018. (See Exhibit "C" Human Resource Management System Report)

24.    Dudley, during his employment by the Clayton County School District, worked as a music/chorus teacher at North Clayton Middle School. (See Exhibit "D" Clayton County Human Resources Separation form)

25.    On February 15, 2018, Jamez Dudley submitted a Resignation Request Form to the Clayton County School System indicating an effective date of resignation to be May 29, 2018. (See Exhibit "E")

26.    On April 19, 2018, Valerie Henderson, Human Resource Director for Clayton Count School District, acknowledges receipt of Dudley's 'voluntary resignation as Teacher at North Clayton Middle School'. (See Exhibit "F")

27.    On May 11, 2018,  Dudley is advised by the Superintendent of Clayton County Schools that the Clayton County Board of Education 'will not renew your contract for the 2018-2019 school year'. (See Exhibit "G")

28.    On May 29, 2018, Jamez Dudley, according to his Separation Notice from the Clayton County Board of Education, ceased employment by the Clayton County Public School District. (See Exhibit "H")

29.    On July 14, 2018, Dudley is employed by the Newton County School District as a music teacher/chorus teacher and assigned to Liberty Middle School in Covington, Georgia.

30.    On December 14, 2018, an email from an as-yet-to-be identified 'concerned

parent' was sent to the principal of North Clayton Middle School, Shakira Rice, which email reported 'inappropriate text messages' between October 7, 2018 – December 14, 2018 from Dudley to her son' which email was then forwarded to Damaris Garrett, Keith Colbert, and Jason Seda, all employed by the Clayton County School District. (See Exhibit "I")

31.    In an undated Memorandum created by "JW" addressed to Jamez Dudley, indicating that "a contract of employment will not be issued to you 'as yet' at this time, as a result of an on-going investigation…Human Resources will notify you as to your contractual status for the 2018-2019 school year….not later than May 15, 2018". (See Exhibit "J")

32.    On December 19, 2018 Damaris Garrett, in accordance with his mandatory reporting requirements forwarded the email sent to Rice with all attachments thereto to the Educator Ethics Division of the Professional Standards Commission on December 19, 2018. (See Exhibit "K")

33.    On February 15, 2019, the Superintendent of the Newton County Schools was sent, and on February 22, 2019, received correspondence from the Georgia Professional Standards Commission that an investigation was being commenced as to Jamez Dudley; a complaint having been filed by Damaris Garrett of the Clayton County School District. (See Exhibit "L")

34.    On May 11, 2019, Mrs. Alexis Franklin, an 8th grade teacher at Liberty Middle School, reported observing Williams and Dudley coming out of Dudley's apartment.

35.    Upon information and belief, Ms. Franklin reported the above encounter with Williams and Dudley at Dudley's apartment to principal Vincent.

36.    Dudley submitted a resignation dated July 2, 2021 as music teacher at Liberty Middle School; acknowledged on July 7, 2021. (See Exhibit "M")

37.    In a letter dated July 14, 2021, Dudley was allowed to resign from his position as a chorus teacher and released from his contract. (See Exhibit "N")

38.    Jamez Dudley was employed by the Newton County School District and worked as a music/choir teacher at the Liberty Middle School in Covington, Georgia from approximately July 24, 2018 through June 8, 2021. (See Exhibit "O")

39.    Jamez Dudley worked as a music teacher at the Liberty Middle School in Covington, Georgia from approximately July 24, 2018 through June 8, 2021.

## The Abuse

40.    In approximately mid-April, 2019, Jamez Dudley began his grooming of Williams.

41.    In about mid-late April, 2019, while Williams was getting ready for a "Johnny and the Peach" play, Dudley came into the dressing room at school while Williams was changing clothes and said something to Williams to the effect that he (Williams)

had 'nice abs'.

42.    Later, still in approximately mid-to-late April, 2019, Williams was helping organize the music in the storage room at the school when Dudley came in, started casual conversation with Williams and then started asking Williams if he had a girlfriend.

43.    Williams told Dudley that he did have a girlfriend, Qua, and that he really liked her.

44.    Dudley then asked Williams what he would do if he touched him, pointing to Williams' penis.

45.    In response, Williams picked up a microphone from a drawer in the storage room and told Dudley that if he tried, he would hit him with it.

46.    On multiple occasions during the month of April, 2019, Dudley continued his grooming of Williams, engaging in conversations and continuing to speak with him about his home life and about his girlfriend.

47.    In one of the conversations, more likely than not at the end of April, possibly early May, Dudley initiated another conversation with Williams and asked Williams if he could look at his phone.

48.    Williams agreed to show Dudley his phone, whereupon Dudley located a video in the phone and sent a copy of that video, a video Williams had sent to his girlfriend,

to himself.

49.    At some time during what Williams believed to be late April, possibly early May 2019, Dudley asked Williams to stay after school so he (Dudley) could help him (Williams) with the piano.

50.    In about early to mid-May, Dudley asked Williams if he "smoked", and Williams, understanding what Dudley was asking, acknowledged that he had.

51.    Dudley then provided and shared a marijuana cigarette with him.

52.    Later in April 2019, possibly early May, Dudley, continuing his grooming of Williams, showed Williams a pair of skinny jeans and offered them to Williams as 'a gift'.

53.    Williams told Dudley that his mother, Chiquita Perry-Owens, (hereinafter sometimes "Ms. Owens") would never let him accept gifts like that.

54.    Dudley told Williams that he would speak to his mother and make her aware that he had purchased the jeans for his nephew, that they were too small for him, and too inconvenient to return.

55.    Williams' mother agreed and let Ethan accept the jeans.

56.    On or about April 27 or May 4, 2019, a day Williams believes was a Saturday, Dudley asked Williams and his mother if Ethan could babysit Jax, Dudley's son around 6 or 7 yrs old.

57.     Williams' mother agreed and allowed Williams to go.

58.     At or about, as best Williams can recall, April 27 or May 4, 2019, a Saturday, Williams, going to Dudley's apartment to babysit Jax, was sitting on Dudley's couch and believed he smelled marijuana.

59.     Williams went to see what Dudley was doing and saw Williams, through an open bathroom door, with a 'bowl'[1].

60.     Dudley handed the bowl to Williams, told him how to hold it, light it, and then 'breath in'.

61.     Dudley then told Willams to take off his clothes.

62.     Williams complied and continued to smoke and inhale the marijuana.

63.     Dudley then started touching Williams, picked him up and then had him stand on the counter, then began kissing Williams' stomach down to the band of Williams' underwear.

64.     Dudley then pulled down Williams' underwear and put Williams' penis in his mouth.

65.     Dudley continued his sexual assault of Williams, keeping Williams' penis in his mouth until Williams ultimately experienced a climax.

66.     Dudley spit out Williams' semen and commented 'that was salty'.

---

[1] Within modern American cannabis culture, the term "bowl" is often used as a synecdoche to refer to an entire smoking device, especially a glass pipe.

67.    After the assault described immediately above, Williams began to experience multiple thoughts, confusion, depression, and a disrupted and anxious feeling about life in general.

68.    To the best of William's knowledge, in approximately mid-May, 2019, around May 11, 2019, Williams went to Dudley's apartment and confronted Dudley, telling him about his feelings and how he wished he hadn't allowed Dudley to engage him in the pot-smoking and sexual encounters.

69.    Williams told Dudley that he never wanted that stuff to happen again, telling Dudley about his feelings for his girlfriend, and that he didn't want what had been happening to continue.

70.    Dudley, seemingly agreeable, said he would take Williams home.

71.    When walking out of Dudley's apartment Williams saw 'Mrs. Franklin', an 8th grade teacher at Liberty Middle School, who asked Williams what he was doing at Dudley's apartment.

72.    Williams, unsure and still upset and anxious about his conversation with Dudley said something like 'Mr. Dudley is my uncle'.

73.    Dudley came out; Williams and Dudley got in Dudley's car; but before exiting the complex, Dudley stopped at the apartment complex car wash area.

74.    Dudley pressured and coerced Williams, then reached into his glove

compartment, took out a tube of 'lubricant' and reached over to Williams pants, pulled down Williams' zipper, and pulled out Williams' penis, began rubbing on the lubricant and masturbating him.

75.    Williams, still confused and emotionally anxious, uneasy, and fearful, began to experience a climax.

76.    Williams told Dudley that he was about to ejaculate, and Dudley put his head down, told Williams to 'cum in my mouth' and put Williams's penis into his mouth.

77.    The sexual assaults by Dudley continued through mid-January, 2021.

     a.    mid to late May 2019, at a cemetery, Dudley takes down his pants, bends over and tells Williams to 'put it inside me';

     b.    approximately June 2019, Dudley gives Williams marijuana and Dudley, after Williams was at least somewhat high, pulled Williams' pants off and began oral sex on him;

     c.    approximately early to mid-October, 2019, Dudley takes Williams to see the grave of opera singer, Jessye Norman, located in Augusta, Georgia where Dudley masturbated Williams;

     d.    approximately late September, 2019 Dudley masturbates Williams at the apartment complex car wash area;

78.    In approximately late August 2019, Dudley told Williams that he couldn't give

him rides anymore because he heard 'some people were telling the principal he (Dudley) was giving him (Williams) rides'.

79.    Ethan received messages through a social platform, Instagram, from an account Ethan believes to be Dudley's, asking for photos. Ethan blocked the account.

80.     In early June, 2021, Dudley was terminated, resigned, or requested to resign from his position at the Newton County School District.

81.    Between February 22, 2019 and February 27, 2019, the Superintendent of Newton County Schools received written notice from the Georgia Professional Standards Commission dated February 15, 2019 that Jamez E. Dudley was under investigation by the Georgia Professional Standards Commission on the basis of 'an inappropriate relationship with a student'.

**<u>Additional Facts as to Prior Knowledge and Deliberate indifference</u>**

82.    A sequence of relevant events and support thereof include:

    a.    The April 19, 2018 letter (Exhibit "F") referenced GaPSC Rule 505-6.01: Code of Ethics for Educators.

    b.    GaPSC Rule 505-6.01: Code of Ethics for Educators references:

- Child Endangerment
- Conduct with Students addressing:
- Committing any act of child abuse, including physical and verbal abuse;

- Committing any act of cruelty to children or any act of child endangerment;

- Committing any sexual act with a student or soliciting such from a student;

- Engaging in or permitting harassment of or misconduct toward a student;

- Soliciting, encouraging, or consummating an inappropriate written, verbal, electronic, or physical relationship with a student;

- Furnishing tobacco, alcohol, or illegal/unauthorized drugs to any student; or

- Failing to prevent the use of alcohol or illegal or unauthorized drugs by students under the educator's supervision (including but not limited to at the educator's residence or any other private setting).

83.    The information relative to Dudley's conduct during Dudley's employment by the Clayton County School was available to the Newton County School District prior to and during Dudley's hiring and/or employment by the Newton County School District and assignment to the Liberty Middle School.

84.    At all times relevant hereto, the Newton County School District, to include its then Superintendent Samantha Fahrey; and Keisa Vincent, Principal of Liberty Middle School were aware of Board Policy GAK(1) pertaining to Background Checking of new hire teachers.

85.    Board Policy GAK(1): Background Check, a copy of which is attached hereto

as Exhibit "P", involved ministerial duties.

86.    At all times relevant hereto, the Newton County School District, to include its then Superintendent Samantha Fahrey; and Keisa Vincent, Principal of Liberty Middle School, with respect to Board Policy GAK(1): Background Check, failed to exercise due diligence; failed in their execution of their respective ministerial duties; and were deliberately indifferent to the consequences thereof.

87.    At all times relevant hereto, the Newton County School District, to include its then Superintendent Samantha Fahrey; and Keisa Vincent, Principal of Liberty Middle School were aware of Board Policy JCAC: Sexual Harassment of Students which stated, in pertinent part:

> The intent of this policy is to comply with the Title IX federal regulations concerning sexual harassment. To the extent that additional requirements are specified in federal law or regulations, the District shall comply with such requirements.

88.    Board Policy JCAC: Sexual Harassment of Students defined Sexual Harassment to mean:

> Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the District's education program or activity.

89.    Board Policy JCAC: Sexual Harassment of Students defined Sexual Assault to mean:

> "Sexual assault"- an offense classified as a forcible or nonforcible sex offense under the uniform crime reporting system of the Federal Bureau of Investigation

90.    Board Policy JCAC: Sexual Harassment of Students, Section 4, required:

- Upon receipt of a formal complaint, the District shall within 10 days provide the following written notice to the parties…

and under Section 7:

- After providing written notice to the parties of the receipt of a formal complaint, the District shall have 15 days to investigate.

91.    Board Policy JCAC: Sexual Harassment of Students involved discretionary and ministerial duties.

92.    At all times relevant hereto, the Newton County School District, to include its then Superintendent Samantha Fahrey; and Keisa Vincent, Principal of Liberty Middle School, with respect to Board Policy JCAC: Sexual Harassment of Students, failed to exercise due diligence; failed in their execution of their respective ministerial duties; and were deliberately indifferent to the consequences thereof.

93.    At all times relevant hereto, Defendant Newton County School District as well

as its then Superintendent Samantha Fahrey; and Keisa Vincent, Principal of Liberty Middle School that:

a.    as early as 1998 the U.S. Supreme Court stated: "[t]he number of reported cases involving sexual harassment of students in schools confirms that harassment unfortunately is an all too often aspect of the educational experience." *Gebser b. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998);

b.    as early as 2001 the U.S. Department of Education Office for Civil Rights (sometimes referred to as "O.C.R.") issued Revised Sexual Harassment Guidelines: Harassment of Students by School Employees, Other Students, or Third Parties ("2001 O.C.R. Guidance"), informing all U.S. Schools receiving Federal financial assistance that "[p]reventing and remedying sexual harassment in schools is essential to ensuring a safe environment in which students can learn." O.C.R. went on to remind schools that:

> "[S]chools need to ensure that employees are trained so that those with authority to address harassment know how to respond appropriately, and other responsible employees know that they are obligated to report harassment to appropriate school officials. Training for employees should include practical information

about how to identify harassment and, as applicable, the person to whom it should be reported."

c.    as early as January 2006, O.C.R. issued a Dear Colleague Letter – Sexual Harassment Issues, to the U.S. public schools, indicating that:

"[u]nfortunately, a significant number of students are still subjected to sexual harassment, which can interfere with a student's education as well as his or her emotional and physical well-being" and reminded public schools of their obligation "to take immediate and effective steps to end sexual harassment when it occurs, prevent its recurrence, and remedy its effects";

d.    as early as April 2011 O.C.R. sent another Dear Colleague Letter: Sexual Violence ("2011 O.C.R. Guidance") that issued a "call to action" to the nation's schools because of "deeply troubling" data regarding school-place sexual violence, informing schools that:

[d]uring the 2007-2008 school year, there were 800 reported incidents of rape and attempted rape and 3,800 reported incidents of other sexual batteries at public high schools."   The Guidance stated, "[a] number of different acts fall into the category of sexual violence, including rape, sexual assault, sexual battery,

and sexual coercion. All such acts of sexual violence are forms

of sexual harassment under Title IX."

The foregoing statistics referred to public high schools and served clear notice

to public schools, their executives and administrators of the need for

vigilance;

e.    as early as April 2015 O.C.R. sent yet another Dear Colleague Letter:

Title IX Coordinators, and issued a Title IX Resource Guide, to all U.S. public

schools reminding them of their obligation to designate at least one employee

as a Title IX Coordinator who is responsible for coordinating the school's

efforts to comply with and carry out the school's Title IX responsibilities

pursuant to 34 C.F.R. §106.8(a). O.C.R. stated:

"In our enforcement work, O.C.R. has found that some of the

most egregious and harmful Title IX violations occur when a

recipient fails to designate a Title IX coordinator or when a Title

IX coordinator has not been sufficiently trained or given the

appropriate level of authority to oversee the recipient's

compliance with Title IX."

The foregoing refers to the designation and/or training of Title IX coordinators and

served as further notice to all public schools, that harassment continues to be a

considerable issue in public schools and as such public schools have a ministerial and absolute duty to fully investigate all reports of sexual misconduct which, in this instance, Plaintiff contends was not conducted.

94.    At all times relevant hereto, the Newton County School District, to include its then Superintendent Samantha Fahrey; and Keisa Vincent, Principal of Liberty Middle School, had clear notice as to sexual violence and misconduct among students and their non-delegable duty of vigilance, yet failed to exercise due diligence; failed in their execution of their respective ministerial duties of adherence thereto; and were deliberately indifferent to the consequences thereof.

## CAUSES OF ACTION

## COUNT ONE

## Violation of Title IX as to Defendant Newton County School District

95.    The Newton County School District is an "educational program or activity receiving Federal financial assistance..." within the meaning of Title IX of the Education Amendments of 1972, 20 U.S.C. 51681 (a) (hereinafter "Title IX").

96.    Title IX of the Education Amendment of 1972 ("Title IX"), 20 U.S.C. S 1681 (a) states:

No person in the United States shall, on the basis of sex, be excluded

from participation in, be denied the benefit of, or be subjected to

discrimination under any education program or activity receiving Federal financial assistance....

97.    At all times relevant hereto, former Newton County School Superintendent Samantha Fahrey, and Liberty Middle School principal Keisa Vincent, were employees of the School District and at all times relevant hereto acted in the course and scope of their ministerial duties.

98.    Title IX's broad prohibition against sexual discrimination includes sexual harassment, defined as the unwelcome conduct of a sexual nature.

99.    Despite clear notice by the U.S. Supreme Court and the U.S. Department of Education Office for Civil Rights regarding the obligations of all U.S. public schools, school executives and administrators, Defendant Newton County School District, and their most senior overseers of students and teachers to include former Superintendent of the Newton County School District Samantha Fahrey, and Keisa Vincent, principal of Liberty Middle School, failed to remediate, and failed to fully investigate the effects of sexual assault and abuse inflicted upon students, and specifically in this case as to Plaintiff Ethan Williams, and failed to provide appropriate training and education to Newton County School District's executives, administrators, staff, students, parents and other overseers of students.

100.   Newton County School District was deliberately indifferent, reckless, and demonstrated a callous indifference to Plaintiff's federally protected rights.

101.   At all times relevant hereto, Newton County School District had the authority, and the then Superintendent of Schools Samantha Fahrey had the ability to take; failed to take; and was deliberately indifferent in carrying out or ensuring the carrying out of ministerial duties with respect to taking corrective and preventative measures to safeguard students and acts of sexual violence and misconduct of its students, including the inappropriate sexual misconduct of Jamez Dudley.

102.   Newton County School District is liable to Plaintiff, under Title IX, for damages in such amount that will compensate him for any special damages incurred, including those damages calculable to his loss of educational opportunities.

## **COUNT TWO**

### **Violation of 42 U.S.C. 1983 IX as to Defendants Newton County School District, former Superintendent of Schools Samantha Fahrey and Keisa Vincent, Principal of Liberty Middle School, and Jamez Dudley**

104.   42 U.S.C. 1983 states:

            Every   person   who,   under   color   of   any   statute,   ordinance,

regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity...

105. At all times relevant hereto, Ethan Williams had a liberty interest in his bodily integrity that was protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

106. At all times relevant hereto, there were laws, rules, regulation, policies and procedures, promulgated by federal and state laws and policies and procedures of the Newton County School District, by and through such laws, rules, regulation, policies, procedures, practices and/or customs, failure to adhere to their non-discretionary, ministerial duties caused physical and emotional harm to Plaintiff Ethan Williams.

107. The conduct described herein and to be shown with additional clarity and certainty at trial, demonstrates Plaintiff Ethan Williams was deprived of his liberty interests and in his bodily integrity in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

108.   The conduct described herein and to be shown with additional clarity and certainty at trial demonstrate Defendants Newton County School District's, former Superintendent of the Newton County School District Samantha Fahrey's, and principal of Liberty Middle School Keisa Vincent's, and Jamez Dudley's failure to safeguard the bodily integrity of Ethan Williams and thereby created, allowed and/or elevated the danger from a sexual predator, to wit: Jamez Dudley.

109.   Defendants Newton County School District, former Superintendent of the Newton County School District Samantha Fahrey, and Keisa Vincent, principal of Liberty Middle School, and Jamez Dudley are liable to Plaintiff, individually or collectively under 42 U.S.C. 1983 for damages in such amount as will compensate the Plaintiff for the physical, emotional, mental and educational injuries he has suffered and will continue to suffer.

## COUNT THREE

### Violation of 42 U.S.C. 1988 as to Defendants Newton County School District, former Superintendent of Schools Samantha Fahrey and Keisa Vincent, Principal of Liberty Middle School, and Jamez Dudley

110.   Defendants Newton County School District, former Superintendent of the Newton County School District Samantha Fahrey, and Keisa Vincent, principal of Liberty Middle School, and Jamez Dudley are liable, individually, or collectively to

Plaintiff under 42 U.S.C. 1988 for reasonable attorney's fees, including expert fees.

## AS TO PLAINTIFF'S STATE LAW CLAIMS

## COUNT FOUR

## NEGLIGENT HIRING, TRAINING AND SUPERVISION
## AS TO DEFENDANTS SAMANTHA FAHREY AND KEISA VINCENT

111.   At all times relevant hereto, Defendant and former Superintendent of Schools Samantha Fahrey had a duty to be diligent in the vetting, hiring, training and supervision of Jamez Dudley; or in the alternative to oversee and ensure the diligent vetting, hiring, training and supervision of Jamez Dudley.

112.   At all times relevant hereto, Defendant Keisa Vincent had a duty to be diligent in the training and supervision of Jamez Dudley; or in the alternative to oversee and ensure the diligent supervision of Jamez Dudley.

113.   Defendants Samantha Fahrey and Keisa Vincent had duties, legally owed to Ethan Williams; breached their respective duties with respect to the vetting, hiring, and supervision of Jamez Dudley; such breach or breaches resulting in the continuing sexual assault and abuse of the Williams, resulting in physical and emotional damages.

## DAMAGES

114.   Plaintiff Ethan Williams suffered special damages in the form of medical and medically related amounts not yet fully calculated, but to be set forth prior to the

entry of a pre-trial order; and is entitled to the award of such damages against all Defendants when proven with certainty at trial.

115. Plaintiff Ethan Williams suffered general damages for his past, present and future damages in such amount as determined by the enlightened consciousness of an impartial jury.

116. Plaintiff Ethan Williams suffered a loss of educational opportunities and is entitled to the award of such damages against all Defendants when proven with certainty at trial.

117. The conduct of Defendant Jamez Dudley demonstrated willful misconduct, malice, wantonness, a conscious indifference to consequences, and an entire want of care so as to permit the award of punitive damages against Defendant Jamez Dudley in an amount to be determined by the enlightened consciousness of an impartial jury.

**WHEREFORE,** Plaintiff respectfully requests, as to all Defendants:

    a.    As to all Defendants, trial by jury;

    b.    As to all Defendants, Plaintiff's special and compensatory damages in accordance with applicable law and shown with certainty at trial;

    c.    As to all Defendants, attorney's fees, and expenses;

    d.    As to all Defendants, all other damages allowed under Georgia and Federal law;

e.    As to Defendant Dudley, punitive damages awarded in accordance with
the enlightened consciousness of an impartial jury; and

f.    as to all Defendants, such other relief as this Court deems just and
proper.

Respectfully submitted this 2nd day of July, 2025.

ISENBERG & HEWITT, P.C.

*/s/ Ryan L. Isenberg*
Ryan L. Isenberg
Georgia Bar No. 384899
Melvin L. Hewitt, Jr.
Georgia Bar No. 350319

1200 Altmore Avenue, Suite 120
Sandy Springs, Georgia 30342
T 770 351 4400
ryan@ihlaw.us
mel@isenberg-hewitt.com